Isao HITAI, also known as Mario Isao
Hitai, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 358, Docket 29176.

United States Court of Appeals
Second Circuit.

Argued March 5, 1965.

Decided March 29, 1965.

Francis L. Giordano, Brooklyn, N. Y.,
for petitioner.

James G. Greilsheimer, Sp. Asst. U. S.
Atty., New York City (Robert M. Mor-
genthau, U. S. Atty. for Southern Dist.
of New York, and Francis J. Lyons, Sp.
Asst. U. S. Atty., New York City, of
counsel), for respondent.

Before MOORE, KAUFMAN and
HAYS, Circuit Judges.

HAYS, Circuit Judge.

Petitioner, a citizen of Brazil, was
born in Brazil. His father, who is now
dead, was a Brazilian citizen as is his
mother who is still living. Both parents
were, as the special inquiry officer found,
"natives of Japan of the Japanese or
Asiatic race."

Petitioner entered this country as a
temporary visitor for pleasure on Janu-
ary 25, 1964, with permission to remain
in that status until June 30, 1964.

In May 1964 the Immigration and Nat-
uralization Service commenced deporta-
tion proceedings charging petitioner with
having violated the terms of his permis-
sion to enter as a visitor by working as a
hospital porter. At the hearing held pur-
suant to Section 242(b) of the Immigra-

tion and Nationality Act [1] petitioner admitted that he had worked full time since February 17. The special inquiry officer found him deportable. Petitioner then applied for adjustment from the status of a "bona fide nonimmigrant" to that of "an alien lawfully admitted for permanent residence" under Section 245 (a) of the Act.[2] The special inquiry officer denied the application on the ground that petitioner did not meet the requirement of Section 245(a) that "the alien [be] * * * eligible to receive an immigrant visa." Although as an "immigrant who was born in * * * an independent country of Central or South America," petitioner would otherwise be classified as a "nonquota immigrant,"[3] the special inquiry officer assigned petitioner to the quota area for Japan because of Section 202(b) (4) of the Act. Under the terms of that section an

"immigrant born outside the Asia-Pacific triangle [defined by geographic boundaries including Japan] who is attributable by as much as one-half of his ancestry to a people or peoples indigenous to not more than one separate quota area, situate wholly within the Asia-Pacific triangle, shall be chargeable to the quota of that quota area * * * "[4]

A visa is not available under the Japanese quota.

The Board of Immigration Appeals approved the special inquiry officer's decision, but, rather than ordering deportation, granted petitioner permission to depart voluntarily.

■ The Immigration and Naturalization Service concedes that this order is reviewable by this Court under Section 106(a) of the Act[5] as interpreted in Foti v. Immigration and Naturalization

Serv., 375 U.S. 217, 84 S.Ct. 306, 11 L. Ed.2d 286 (1963),[6] and we concur.

■ Petitioner challenges the constitutionality of Section 202(b) (4) on the ground that it prescribes a standard which is arbitrary and unreasonably discriminatory. He argues that a law that discriminates betwen native-born Brazilians for the purpose of granting permanent residence in the United States, by assigning those Brazilians whose ancestry is attributable to certain "Asiatic races" to a quota area, which has a definite limit, and permitting other Brazilians whose ancestry is not so attributable to enter the United States as permanent residents without any quota area limit, violates the requirements of due process of law guaranteed by the Fifth Amendment and those standards of equal protection of the laws contained by implication in that amendment.

We are constrained to reject petitioner's claim that Section 202(b) (4) as here applied is unconstitutional. The exclusion and deportation of aliens pursuant to statute falls within that category of policy decisions, which, "so far as the subjects affected are concerned, are necessarily conclusive upon all * * * [the government's] departments and officers," including "the judiciary." The Chinese Exclusion Case, 130 U.S. 581, 606, 9 S.Ct. 623, 630, 32 L.Ed. 1068 (1889). In Harisiades v. Shaughnessy, 342 U.S. 580, 588–589, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952), Mr. Justice Jackson said:

"[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively en-

1. 66 Stat. 209 (1952), 8 U.S.C. § 1252 (b) (1958).

2. 74 Stat. 505 (1960), 8 U.S.C. § 1255(a) (Supp. V, 1964).

3. § 101(a) (27) (C), 66 Stat. 169 (1952), 8 U.S.C. § 1101(a) (27) (C) (1958).

4. 66 Stat. 177 (1952), 8 U.S.C. § 1152(b) (4) (1958).

5. 75 Stat. 651 (1961), 8 U.S.C. § 1105a(a) (Supp. V, 1964).

6. See Talavera v. Pedersen, 334 F.2d 52 (6th Cir. 1964); Skiftos v. Immigration and Naturalization Serv., 332 F.2d 203 (7th Cir. 1964).

trusted to the political branches of government as to be largely immune from judicial inquiry or interference." (Footnote omitted.)

See also Galvan v. Press, 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954); Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905 (1893).

■ Petitioner also bases his argument on Article 55 of the United Nations Charter which provides for the promotion of "universal respect for, and observance of, human rights and fundamental freedoms for all without distinction as to race, sex, language, or religion." This provision of the Charter is not self-executing and therefore did not *ex proprio vigore* repeal or invalidate any of the laws, including the immigration laws, of the member states. Vlissidis v. Anadell, 262 F.2d 398 (7th Cir. 1959). Compare Sei Fujii v. State, 38 Cal.2d 718, 242 P.2d 617 (1952).

The petitioner makes no claim that he was not accorded a full hearing with adequate notice pursuant to Section 242 (b) nor that the statutes were misapplied or that the facts were incorrectly found in his case. Therefore the petition must be denied.

Denied.