Susan M. FAUSTINO, Infant under 14 years of age, by her Guardian ad Litem Albano Vieira, Plaintiff,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

No. 68 Civ. 1559.

United States District Court
S. D. New York.

June 17, 1969.

Bertrand D. Gerber, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, by Daniel Riesel, Sp. Asst. U. S. Atty., New York City, for defendant.

CANNELLA, District Judge.

Motion by plaintiff pursuant to 28 U.S.C. §§ 2282 and 2284 to convene a three judge court, is denied. Motion by plaintiff pursuant to Rule 56, Federal Rules of Civil Procedure, for summary judgment granting injunctive relief, is denied. Motion by defendant pursuant to Rule 56, Federal Rules of Civil Procedure for summary judgment dismissing complaint, is granted.

The jurisdictional predicate is not enunciated by the plaintiff in the complaint. Clearly, the request for convocation of a three judge court pursuant to 28 U.S.C. §§ 2282, 2284 will not suffice. However, the district court's jurisdiction may be predicated upon Section 279 of the Act.[1]

The question presented has been accurately framed by the Government in its brief to be

> [h]as plaintiff presented a substantial Constitutional question by her allegation that section 201(b) of the Act denies her equal protection because it subjects the alien parents of infant U. S. citizens to the worldwide numerical limitation of immigrant visas while exempting alien parents of adult U. S. citizens from that limitation.

▮ The Court finds that the plaintiff has not presented a substantial question. In arriving at its decision the Court was not unmindful of its responsibility to carefully scrutinize a request to convene a three judge court, in the interests of judicial economy. Bynum v. Conn. Com'n on Forfeited Rights,

et al., 410 F.2d 173 (2 Cir. 1969) and cases cited therein.

The operative facts which form the basis of this litigation are not placed in dispute by the affidavits of the parties.

Plaintiff, Susan M. Faustino was born on November 6, 1961 in New York, N. Y. Her parents Antonio DePinno Faustino and Olinda Baptista Faustino are, and were at the time of her birth, citizens of Portugal. In August of 1961, both of plaintiff's parents were admitted into the United States as tourists pursuant to Section 101(a) (15) (B) of the Act, 8 U.S.C. § 1101(a) (15) (B). At the time of their admission Olinda was expecting a child. Prior to the expiration of his visitor's visa Antonio was granted permission to remain as a student from October 3, 1961 until October 3, 1962. His wife was granted a similar extension, and, during this period, in November 1961, plaintiff was born.

Thereafter, the parents of the plaintiff remained in this country illegally beyond the October date and Antonio became employed, although no permission was granted for said employment. Ultimately, the Faustinos departed the country in 1963. Antonio Faustino returned to this country in 1965 as a visitor for pleasure and again continued his sojourn illegally.

In 1966, he secured a position as chauffeur to a Permanent Mission of the United Nations and despite his then illegal status, was allowed to remain in this country pursuant to Section 101(a) (15) (G) (v) of the Act, 8 U.S.C. § 1101 (a) (15) (G) (v) in non-immigrant status. Plaintiff's mother was admitted to this country in 1967 by virtue of her husband's employment.

▮ In July of 1968 the infant petitioner by her guardian ad litem filed a

---

1. The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this title. * * * 8 U.S.C. § 1329 (1952). See: Gordon and Rosenfield, Immigration Law and Procedure, § 8.23 p. 8–128, apparently referring to this remedy.

visa petition to classify her father "immediate relative" pursuant to Section 201(b) of the Act, 8 U.S.C. § 1151(b), in the face of clear language in the statute prohibiting the grant of such an application.

> (b) The 'immediate relatives' referred to in subsection (a) of this section shall mean the children, spouses and parents of a citizen of the United States: *Provided that in the case of parents, such citizens must be at least twenty-one years of age.* The immediate relatives specified in this subsection *who are otherwise qualified for admission as immigrants* shall be admitted as such, without regard to the numerical limitations in this Act. (emphasis supplied)

The application was, as it should have been, denied by both the District Director and the Board of Immigration Appeals on the grounds that beneficiary Antonio Faustino was ineligible for "status as an immediate relative" in view of the undenied fact that "citizen petitioner is only seven years of age".

Plaintiff brought this action for a declaratory judgment declaring Section 201(b) of the Act 8 U.S.C. § 1151(b) unconstitutional and void, and, for a further order directing the defendant to process a visa petition for her father. The plaintiff bottoms her prayer for relief on an allegation of denial of "equal protection of law", reasoning that when, as here, equal protection is denied the Fifth Amendment "due process clause" is violated. The plaintiff asserts that the Fifth Amendment restrains discrimination of such a character as to bring into operation the due process clause, and that legislation by Congress of a discriminatory nature can amount to a denial of due process. From this, plaintiff reasons that if discrimination can be shown, it is a denial of due process. Plaintiff, however, does acknowledge that classifications are usually upheld if they are related to proper legislative purpose.

Essentially, plaintiff contends that the instant classification is arbitrary, and that it denies infant citizens a benefit afforded to citizens who have reached their majority. While the latter is undoubtedly true, the former cannot be so easily established.

■ Congress' authority to prescribe the conditions and terms by which aliens may come into the United States as immigrants is plenary and unfettered[2] even in the face of hardship to an alien's citizen children.[3] The instant legislation is clear and explicit, and the intent is not left in doubt by the definitive legislative history available on this question.[4] We are not presented, as sometimes occurs with a circumstance which was unanticipated. Here it is clear that Congress envisioned this case almost in its essential detail and sought to prevent the very result here desired. A decision by this Court granting relief would be in the face of the rule in this circuit upholding the plenary and unfettered power of Congress to establish the terms and conditions by which aliens may be admitted into the United States as permanent residents.

With respect to plaintiff's claim of arbitrary classification, unquestionably a

---

2. Hitai v. Immigration & Naturalization Service, 343 F.2d 466 (2 Cir. 1965), cert. denied, 382 U.S. 816, 86 S.Ct. 36, 15 L.Ed.2d 63.

3. See Mendez v. Major, 340 F.2d 128 (8 Cir.1965) ; United States ex rel. Hintopoulos v. Shaughnessy, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957). This district has noted certain "safety valves" by which Congress sought to alleviate undue hardship. Papageorgiou v. Esperdy, 212 F.Supp. 874 (S.D.N.Y.). The Court notes that the parents of plaintiff are presently in no danger of leaving the country. The Court further notes, that the Service has chosen not to disqualify the beneficiary of this petition out of hand by virtue of his prior delinquencies under the Act. Neither factor was considered in arriving at the instant decision however.

4. See Appendix A.

classification has been established by the Congress in this area. However, the Court of Appeals in this circuit has held,

> [i]t is only the 'invidious discrimination' or the classification which is 'patently arbitrary [and] utterly lacking in rational justification' which is barred by either the 'due process' or 'equal protection' clauses. (citation omitted) A classification or regulation, on the other hand, 'which is reasonable in relation to its subject and is adopted in the interests of the community is due process.' (citation omitted) *Gruenwald v. Gardner*, 390 F.2d 591, 592 (2d Cir. 1968).

 Where the classification is patently established to accomplish a known purpose, which purpose is properly within the plenary power of Congress, an attack upon that classification must fail as not presenting a substantial constitutional question, unless the classification can be shown to constitute "invidious discrimination" or be "patently arbitrary", or "utterly lacking in rational justification".

The Court determines that this case does not present a substantial constitutional question upon examination of the statute and the legislative history read in connection therewith, and the previous precedents all of which foreclose this question as a litigable issue.

 The Court is convinced that Congress intended by Section 201(b) of the Act, 8 U.S.C. § 1151(b) to establish a classification in this area and that said classification is not violative of the "due process" clause of the Constitution. The classification was intended by Congress to protect the integrity of the existing immigration laws which provide for worldwide numerical limitation and is reasonable in relation to its subject. Absent this classification, wholesale avoidance of the established limitations would be possible by means of the very device employed in this case (whether unwittingly or not), i.e., an alien expectant mother arrives in this country as a visitor, during her stay the "citizen" is born,

and shortly thereafter, a petition by the new citizen for permanent resident status of the mother and other "immediate relatives".

> To grant * * * this form of relief upon the accident of birth in the United States of their son would be to deprive others, who are patiently awaiting visas under their already oversubscribed quotas. United States ex rel. Hintopoulos v. Shaughnessy, 353 U.S. at 74–75, 77 S.Ct. at 620.

Consequently, the plaintiff's application for a three judge court and summary judgment granting affirmative relief is denied.

The Government's motion for summary judgment dismissing the complaint, is granted.

So ordered.

## APPENDIX A

During the Senate Hearings the following colloquy developed between Senator Ervin of North Carolina and the late Senator Kennedy of New York who was testifying on behalf of S.500:

> "Senator ERVIN. Now, under existing laws the provision which grants nonquota status to the parents of citizens of the United States is restricted to children over 21 years of age, is it not?
>
> Senator KENNEDY of New York. That is right.
>
> Senator ERVIN. What's the purpose of the amendment which wipes out that 21-year-age limit?
>
> Senator KENNEDY of New York. I think it was—
>
> Senator ERVIN. In other words, as I construe section 8, I believe it is, of this bill, it would grant non-quota status and thereby permit the entrance of parents of any child who is an American citizen.
>
> Senator KENNEDY of New York. Senator, it is a technical mistake in the drafting, and I pointed it out to the House Committee last year. It should have rectified.

Senator ERVIN. That should be changed?

Senator KENNEDY of New York. That is right.

Senator ERVIN. I agree with you, because I think that this provision is unwise. Foreigners can come as visitors and then have child born here, and they would become immediately eligible for admission would they not, as parents of this child as now worded?

Senator KENNEDY of New York. That is right. I think it should go back as it was. As I say, I pointed this out to the House Committee last year, and it should have been rectified before being sent up again." *

At a subsequent session of the subcommittee the Honorable Norbert Schlei, then an Assistant Attorney General and one of the principal architects of the bill, testified and was closely questioned by Senator Ervin:

"Senator ERVIN. So a married couple from some foreign country, all they would have to do under this provision to become eligible for admittance to America immediately as nonquota immigrants would be to arrange to come over under a temporary visa and have the wife give birth to a child while here.

Mr. SCHLEI. Well, I think there is an error in the drafting of that, Senator.

Senator ERVIN. Yes.

\* \* \* \* \* \*

Senator ERVIN. If you let the law stand as it is now, that is what it accomplishes, is it not, because now under existing law, as I understand it, this 21-year age limit applies.

Mr. SCHLEI. With respect to the second preference that parents now get.

Senator ERVIN. Yes.

Mr. SCHLEI. Yes sir.\*\* \* \* \* "

\* \* \* \* \* \*

Subsequently, the legislative history contained the following:

PURPOSE OF THE BILL \* \* \* 2. Parents of U.S. citizens (if such citizen is over 21 years of age) will not come under a numerical limitation \* \* \*

STATEMENT \* \* \* In order that the family unit may be preserved as much as possible, parents of adult U.S. citizens, as well as spouses and children, may enter the United States without numerical limitation. p. 3332.\*\*\*

---

\* Hearings before the subcommittee on Immigrations and Naturalization of the Committee on the Judiciary, United States Senate 89th Cong. 1st Sess. S. 500 (1965) p. 230 and 231.

\*\* Ibid. 270–271.

\*\*\* S.Rep. No. 748, 89th Cong., 1st Sess. (1965) ; Immigration and Nationality Act

—Amendments, 2 U.S.Code Congressional and Administrative News, 89th Cong., 1st Sess. (1965), p. 3328.
The Court wishes to express its appreciation to Special Assistant U.S. Attorney Daniel Riesel for his thorough presentation on behalf of the Government.