MOVIMIENTO DEMOCRACIA, INC., Mercedes Hernandez Guerrero, et al., Plaintiffs,

v.

Michael CHERTOFF, Department of Homeland Security, et al., Defendants.

No. 06–20044CIV.

United States District Court, S.D. Florida. Miami Division.

Feb. 28, 2006.

Kendall B. Coffey, Coffey & Wright, LLP, Miami, FL, Joseph Scott Geller, Geller, Geller, Beskin Shienvold, Fisher & Garfinkel, Hollywood, FL, Benedict Paul Kuehne, Sale & Kuehne, Miami, FL, Daniel Warren Raab, Coral Gables, FL, Luis Fernandez, Fernandez, Caubi, Fernandez, Cancio, Miami, FL, Wilfredo Oscar Allen, Miami, FL, Oscar Santiago Rodriguez, Oscar Rodriguez, PA, Coral Gables, FL, William J. Sanchez–Calderon, Miami, FL, for Plaintiffs.

Dexter Lee, United States Attorney's Office, Miami, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss for Lack of Standing (D.E. No. 11), filed on *January 26, 2006.*

THE COURT has considered the motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED. Neither the association Movimiento Democracia nor the named relatives Mercedes Hernandez–Guererro, Aracelys Hernandez, and Mariela Conesa have standing to file this suit.

### I. Background

This case stems from the repatriation of fifteen Cubans who were picked up by the United States Coast Guard after they landed on the old Seven Mile Bridge. Plaintiffs include four of the fifteen repatriated Cubans, three relatives of the repatriated Cubans who now live in the United States, and the association Movimiento Democracia. Plaintiffs filed suit alleging that they were improperly repatriated to Cuba. They allege that by landing on the old Seven Mile Bridge, they were on United States territory, they should have been considered "feet dry," and they should have been admitted to the United States under the "wet foot/dry foot" policy.

Defendants' Motion to Dismiss seeks to dismiss the complaint against the United States citizens and residents who are family members of the repatriated Cubans ("the relatives") and Movimiento Democracia for lack of standing. Defendants argue that these plaintiffs lack both Constitutional standing and statutory standing under the Administrative Procedure Act (APA). Defendants do not argue against the repatriated Cubans' standing.

### II. Standard of Law

 Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a suit for lack of subject matter jurisdiction and a court lacks subject matter jurisdiction when the plaintiffs lack standing to sue. The Supreme Court has noted two different lines of standing analysis: "Article III standing, which enforces the Constitution's case or controversy requirement, and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk*

*Grove Unified School District v. Newdow,* 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). To establish Article III standing, a party must demonstrate:

(1) that it has suffered an 'injury in fact' that is concrete and particularized,

(2) that the injury is 'fairly traceable' to the actions of the defendant, and

(3) that the injury will likely be redressed by a favorable decision.

*National Alliance for the Mentally Ill, St. Johns Inc. v. Board of County Commissioners of St. Johns County,* 376 F.3d 1292, 1295 (11th Cir.2004)(quoting *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)). Meanwhile, prudential standing encompasses the following:

(1) the general prohibition on a litigant's raising another person's legal rights,

(2) the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and

(3) the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

*Newdow,* 542 U.S. at 12, 124 S.Ct. 2301.

### III. Analysis

This case raises prudential standing concerns because both the relatives and Movimiento Democracia are third party litigants trying to raise other people's legal rights. Therefore, this Court will use the Supreme Court's standing analysis for third-party standing (the relatives) and associational standing (Movimiento Democracia).

### A. Third–Party Standing

 For third-party standing, first "the litigant must have suffered an 'injury in fact,' that gives him or her a 'sufficiently concrete interest' in the outcome of the dispute." *National Alliance,* 376 F.3d at 1295 (quoting *Singleton v. Wulff,* 428 U.S.

106, 112–116, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). The injury in fact must be "imminent" or "real and immediate" and not merely "conjectural" or "hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Furthermore, "general grievances against allegedly illegal governmental conduct are insufficient" to establish an injury and invoke standing. *United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Second, "the litigant must have a close relation to the third party," and third, "there must exist some hindrance to the third party's ability to protect his or her own interests." *National Alliance,* 376 F.3d at 1295. No hindrance to the third party exists if the third party is already asserting its own rights or interests. *See Knight v. Alabama,* 14 F.3d 1534, 1554 (11th Cir.1994)

In this case, the relatives allege that they have satisfied these standing elements. They argue that their "injury in fact" was loss of love, affection, and any financial support their relatives might have given them upon getting jobs in the United States. The relatives allege that this injury gives them a sufficiently concrete interest in the outcome of the dispute and that since they are family members they have a close relation to the repatriated Cubans. Finally, they argue that the act of repatriation effectively prevented the repatriated Cubans from protecting their own interests in Court.

Although the relatives may have a close relation to the repatriated Cubans, the Court finds their arguments on the other elements to be unpersuasive. First, the relatives themselves do not have a sufficient injury in fact. The crux of their argument is that they have lost the right to familial association; however, there is no statutory or constitutional right to familial association with a person trying to immigrate to the United States. On the contrary, various cases have shown that neither United States citizens nor lawful permanent residents have any due process or equal protection rights insofar as the deportation of their spouses or other family members. For example, in *Swartz v. Rogers,* the Court held that a wife had no due process rights when her husband, whom she had been married to and living with in the United States for thirteen years, was deported. *Swartz v. Rogers,* 254 F.2d 338 (D.C.Cir.1958). The Court reasoned that although "deportation would put burdens upon the marriage," it "would not in any way destroy the legal union which the marriage created." *Id.*

Similarly, the Second Circuit has held that "wives as resident aliens have no constitutional right to keep [their husbands] here [in the United States] on the theory that the integrity of the family is protected by equal protection principles." *Noel v. Chapman,* 508 F.2d 1023, 1027 (2d Cir. 1975). The *Noel* Court further noted that INS's decision to deport the plaintiff wives' husbands did not interfere with any fundamental right to marry or to raise a family. *Id.* at 1028. The plaintiff wives in *Swartz* and *Noel* could show no rights violations, and therefore no injury, with the deportation of their husbands. Lacking an injury, the wives had no standing. *See Agosto v. Boyd,* 443 F.2d 917 (9th Cir.1971) (holding that there is "neither statutory nor decisional authority" to confer standing "upon the relatives of an alien to intervene in pending deportation proceedings").

The reasoning in the above cases should be used in the case at hand. If a wife cannot intervene in the deportation of her husband, she certainly would not have standing to intervene in the interdiction and repatriation of her husband, son, or daughter. Furthermore, this reasoning is also applicable to more attenuated family

relationships, such as aunt, uncle, niece, and nephew.

The relatives also did not show that the repatriated Cubans are hindered from protecting their own rights themselves. Although the Cubans are in Cuba and will not be able to actively participate in this case, the fact remains, that they are listed as parties to this suit. Their standing was not contested by Defendants. The Eleventh Circuit has held that there is "no obstacle to [third parties] asserting their rights for themselves" when "in fact, they [are] already doing so." *Knight,* 14 F.3d at 1554. In *Knight,* the Court held that Alabama State University did not have standing to sue on behalf of its students because the plaintiffs in the case had been certified as representatives of a class that included the students. *Id.* In this case, the relatives cannot sue on behalf of the repatriated Cubans because the repatriated Cubans are already included in the suit.

### B. Associational Standing

■ "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Services. Inc.,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610.

■ In this case, plaintiff association Movimiento Democracia (MD) has failed to meet the necessary elements for associational standing. First, MD cannot show that its members would otherwise have standing to sue in their own right. MD makes no allegations concerning membership in the Complaint. MD does argue in the Response to the Motion to Dismiss that two of its members have standing: Mercedes Hernandez Guerrero (one of the relatives) and Junior Blanco (one of the

repatriated Cubans). The Court has already held above that Mercedes Hernandez Guerrero, as a relative, does not have standing. For Junior Blanco, MD has failed to produce any evidence of his membership. At oral argument, counsel for Plaintiff argued that membership is based on taking acts which are in furtherance of MD's cause. However, that definition of membership is too uncertain to be used as a basis for standing. Therefore, because MD cannot show that its members would otherwise have standing to sue in this case, MD lacks associational standing.

### C. Standing under the APA

■ Plaintiffs also allege that they have standing based on the Administrative Procedure Act, 5 U.S.C. § 702, which states, "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Therefore, Plaintiffs "must establish that the injury [they] complain of (*[their]* aggrievement, or the adverse effect *upon [them]* ) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for [their] complaint." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

■ The Court has already established above that neither the relatives nor MD has suffered an injury in fact sufficient to give it standing in this suit. In addition, also as discussed above, neither the relatives nor MD can point to a "statutory provision whose violation forms the legal basis for their complaint." Therefore, Plaintiffs do not successfully allege standing based on the Administrative Procedure Act.

## IV. Conclusion

Based on the foregoing, Defendant's Motion to Dismiss for Lack of Standing is GRANTED.